UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY G.,[1] | Case No. 5:18-cv-02489-JC |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| ANDREW SAUL,[2] Commissioner of Social Security Administration, | |
| Defendant. | |

## I.    SUMMARY

On November 27, 2018, plaintiff Kathy G. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

---

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Andrew Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; November 28, 2018 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 20, 2014, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on May 9, 2014 due to a herniated disc in her neck at C5-7; a pinched nerve in her neck; narrowing of the spine; constant numbness and pain in her left arm; occasional numbness and pain in her chest, right arm and left shoulder blade; headaches; vertigo; and anxiety. (Administrative Record ("AR") 230, 247).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 106-29).

On August 23, 2017, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 81-100).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  right shoulder tear and tendinosis; left shoulder tear and tendinosis; cervical spine degenerative disc disease; lumbar spine degenerative disc disease; and left elbow epicondylitis (AR 83); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 87); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with

///
///

additional limitations[3] (AR 87-88); (4) plaintiff could not perform any past relevant work (AR 98-99); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically Receptionist and Appointment Clerk (AR 99-100); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 90-91).

On October 17, 2018, the Appeals Council denied plaintiff's application for review.[4] (AR 1-7).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R. § 404.1505(a). To be considered disabled, a claimant must have an impairment of

---

[3]The ALJ determined that plaintiff could (i) never climb ladders, ropes, or scaffolds; (ii) occasionally climb ramps or stairs; (iii) occasionally balance, stoop, kneel, crouch, and crawl; (iv) occasionally reach overhead with her bilateral upper extremities; (v) occasionally handle and finger with her left upper extremity; and (vi) never have exposure to unprotected heights and moving mechanical parts. (AR 87-88).

[4]The Appeals Council received two additional exhibits from plaintiff—the Request for Review received on October 17, 2017 and the Representative Brief, dated October 10, 2018 – which it made part of the record (AR 6), and which the Court must also consider in determining whether the ALJ's decision was supported by substantial evidence and free from legal error. Brewes v. Commissioner of Social Security Administration, 682 F.3d 1157, 1162-63 (9th Cir. 2012). The Appeals Council did not make part of the record plaintiff's additional submission of new evidence that did not relate back in time to the period adjudicated by the ALJ and as to which plaintiff requested a new application. (AR 6, 13-77).

such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. § 404.1520). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See

4

Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV.  DISCUSSION**

Plaintiff contends that the ALJ erred in rejecting the opinion of an examining physician, Dr. E. Thomas Chappell. (Plaintiff's Motion at 5-10). For the reasons discussed below, remand is not warranted.

5

## A.    Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted).[5] A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of an examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted). In addition, an ALJ may reject the opinion of any physician, including a treating physician, to the extent the opinion is "brief, conclusory and inadequately supported by clinical

///

---

[5]The Agency has replaced the rules in § 404.1527 with respect to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. For claims filed before that date, such as the claims filed in the instant case, the treating-source rule set forth in § 404.1527 is still applied on review. See, e.g., Nathan K. v. Saul, 2019 WL 4736974, at *3 n.6 (C.D. Cal. Sept. 27, 2019).

findings." <u>Bray v. Commissioner of Social Security Administration</u>, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted).

An ALJ may provide "substantial evidence" for rejecting such a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).

**B.  Pertinent Facts**

**1.  Dr. Chappell**

Dr. Chappell conducted an initial neurosurgical panel qualified medical evaluation of plaintiff on February 24, 2016, in relation to plaintiff's workers' compensation claim. (AR 686-707). Plaintiff's chief complaint was sharp pain in her left neck and upper extremities with paresthesias mostly left, bilateral, weakness in her left upper extremity and lateral left leg numbness and paresthesias. (AR 687). Physical examination findings included diffuse tenderness in the paraspinous muscles of the cervical and upper thoracic spine, as well as in the suboccipital and bilateral trapezii muscles; restricted range of motion of the cervical spine; range of motion of the thoracic-lumbar spine affected by neck pain; severe guarding in the left upper extremity; and diminished sensation in the lateral left leg. (AR 693). Dr. Chappell reviewed plaintiff's medical records, including a MRI of the cervical spine, dated May 12, 2014, showing mild multilevel mid and lower cervical degenerative change; posterior disc osteophyte complexes most pronounced at the C5-C6 and C6-C7 level with borderline central canal narrowing; and minimal neural foraminal narrowing bilaterally at the C5-C6 level and towards the left at the C6-C7 level. (AR 694-703). Dr. Chappell diagnosed plaintiff with major depressive disorder, single episode, in full remission; anxiety disorder, unspecified; chronic pain syndrome; other cervical disc displacement, unspecified cervical region; cervicalgia;

radiculopathy, cervical region; and other muscle spasm. (AR 704). He opined that plaintiff is permanently partially disabled and identified the following work restrictions: avoid sitting or standing in one position more than 20 minutes at a time over a consecutive period greater than four hours, and never in a high-demand or high-stress environment; avoid lifting more than five pounds, as well as avoiding repetitive bending, twisting, stooping, lifting, pushing, pulling, kneeling, or climbing; avoid lifting more than five pounds and repetitive movements with the upper extremities; avoid frequent reaching (particularly overhead), pulling, or pushing using the upper extremities. (AR 704).

### 2. ALJ's Decision

The ALJ cited Dr. Chappell's evaluation and gave "little weight" to Dr. Chappell's disability statement and assessed limitations. (AR 96-97). The ALJ noted that the disability opinion and limitations assessed by Dr. Chappell were "rendered in the context of the claimant's workers' compensation claim" and that "disability" in workers' compensation parlance has a different meaning than under social security law. (AR 96). The ALJ also found the limitations inconsistent with plaintiff's treatment record, which reflects gaps in treatment and conservative treatment. (AR 96). The ALJ gave "partial weight" to the opinions of a consultative examiner and State agency physical medical consultants, which concluded that plaintiff could perform a range of light work. (AR 97-98).

### C. Analysis

Plaintiff argues that the ALJ failed to provide a legally sufficient rationale for rejecting Dr. Chappell's opinion. (Plaintiff's Motion at 6-10). Specifically, plaintiff contends that (1) the ALJ may not reject Dr. Chappell's opinion because it was issued within the context of a workers' compensation case; and (2) plaintiff's treatment was not conservative. (Plaintiff's Motion at 8-9).

The ALJ did not reject Dr. Chappell's opinion because it was issued within the context of a workers' compensation case. (AR 96). What the ALJ did do was

8

consider the pertinent distinctions between the meaning of "disability" in the workers' compensation context and the social security context, which was proper. See Knorr v. Berryhill, 254 F. Supp. 3d 1196, 1212 (C.D. Cal. 2017) ("While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.") (citations omitted).  The ALJ noted that "disability" in workers' compensation parlance focuses on an individual's ability to return to that individual's previous job, whereas "disability" in the social security context requires an inability to perform any substantial gainful activity. (AR 96).  Plaintiff does not dispute these different meanings, but instead argues that the sitting, standing, and lifting restrictions did not need translating.  (AR 96). The ALJ did not try to translate the sitting, standing, and lifting restrictions, and the Court finds no material error here.

Plaintiff also takes issue with the ALJ's characterization of her treatment as conservative, arguing that epidural injections are not a conservative course of treatment.  "Conservative treatment" has been characterized by the Ninth Circuit as "treat[ment] with an over-the-counter pain medication" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008)), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

As the ALJ noted, plaintiff underwent a cervical epidural steroid injection in July 2014, and plaintiff testified that she generally takes over-the-counter pain medication for treatment of her pain symptoms and occasionally takes narcotic

///

///

pain medications.[6]  (AR 89-90, 113).  The ALJ also noted that besides treatment with pain medication, plaintiff's treatment consisted primarily of chiropractic therapy and inconsistent medical treatment.[7]  (AR 89).  Although courts have rejected findings of conservative treatment where claimants received epidural injections (see, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (finding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections not conservative); Christie v. Astrue, 2011 WL 4368189, *4 (C.D. Cal. Sept. 16, 2011) (rejecting ALJ's finding that medical care was "conservative" where claimant's pain management treatment included steroid injections, trigger point injections, epidural shots, and narcotic pain medication) (citation omitted)), taken as a whole, plaintiff's course of treatment is distinguishable.  Plaintiff underwent only one epidural steroid injection in July 2014, near the alleged disability onset date, and never again through the date of the ALJ's decision.  A chiropractor who treated plaintiff as part of her workers' compensation case indicated in June 2016 that plaintiff had "plateaued with multimodal conservative care" and sought to transfer care to a pain management specialist.  (AR 721-23).  In February 2017, a pain management specialist found no evidence of cervical radiculopathy and recommended a shoulder joint and left epicondylar injection, as opposed to the cervical epidural steroid injection that plaintiff requested.  (AR 780).  The record also indicates that a different qualified medical evaluator found plaintiff "certainly not a candidate [for invasive surgery], given plaintiff's normal EMG/nerve conduction studies, MRI showing minimal findings, and "the fact that her

---

[6]Plaintiff testified that she does not take narcotics on a regular basis because they make her sick and she does not want to become addicted.  (AR 113).

[7]Plaintiff does not appear to challenge the ALJ's finding that the record contained significant gaps in treatment for her cervical and shoulder impairments between January 2015 and January 2016.  (AR 89, 96, 694-702, 715, 717, 784).

symptoms are highly subjective." (AR 617). The Court finds no material error in the ALJ's reliance on plaintiff's conservative treatment to reject Dr. Chappell's limitations.[8]

Accordingly, a remand or reversal on this basis is not warranted.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 6, 2019

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[8]Even assuming the ALJ erred in classifying plaintiff's treatment as conservative, the ALJ properly relied on inconsistency with plaintiff's treatment, *i.e.,* significant gaps in treatment, in rejecting Dr. Chappell's limitations.